Delmar **HALL**, Plaintiff-Appellee,

v.

Bobby Martin **MARSHALL** and Lila Marshall, Defendants-Appellants.

No. 18039.

United States Court of Appeals
Sixth Circuit.

May 23, 1968.

S. J. Milligan, Greeneville, Tenn., Milligan, Silvers & Coleman, Greeneville, Tenn., James W. Mitchell, Kingsport, Tenn., on brief, for appellants.

Preston H. Taylor, Kingsport, Tenn., M. Lacy West, Kingsport, Tenn., on brief, for appellee.

Before WEICK, Chief Judge, and CELEBREZZE and PECK, Circuit Judges.

CELEBREZZE, Circuit Judge.

This is a diversity action to recover for personal injuries suffered as the result of a traffic accident near Kingsport, Tennessee. Suit was brought in the United States District Court for the Eastern District of Tennessee, and the jury returned a verdict for the plaintiff in the amount of $7500. Defendants-Appellants have appealed the judgment entered on the verdict on the sole ground that no probative evidence was presented on which the jury could have based a finding of liability. The District Court disagreed with the Defendants, however, and denied a motion for a directed verdict and a motion for judgment *non obstante veredicto*. We find that the Court should have granted the Defendants' motions and therefore reverse the judgment and remand the case with instructions to enter judgment for the Defendants.

The facts relating to the accident are virtually undisputed. Plaintiff-Appellee is a physically and mentally handicapped adult male, who was engaged in selling newspapers at the intersection of Lynn Garden Drive and Gravely Road. Lynn Garden Drive, which is also Highway 23, is a north-south four lane highway; the two lanes for southbound traffic are divided from the northbound lanes only by a double yellow line. The intersection in point was controlled by a traffic light and, it was the Plaintiff's custom to stand on the double yellow line at the north side pedestrian crosswalk selling newspapers to travelers going to and from Kingsport.

Although he had been warned of the danger of selling newspapers from that location, on the day of the accident, the Plaintiff was in his usual position. Mr. G. Allen Godsey, who was traveling in a southerly direction toward Kingsport, stopped to buy a paper from the Plaintiff. Two or three other cars stopped behind Mr. Godsey's car. After he completed the sale, Plaintiff asked Mr. Godsey for a ride into Kingsport and on getting Mr. Godsey's consent, Plaintiff

proceeded around the front of the car to enter on the passenger side.

Meanwhile, Bobby Marshall, his mother Lila Marshall, and his older brother were also driving south on Lynn Garden Drive in a pick-up truck owned by Lila Marshall and driven by Bobby Marshall. Some evidence indicated that a person standing on the double yellow line at the intersection could be seen from a thousand feet up the highway; no evidence, however, indicated whether a person situated as the Plaintiff was, transacting a newspaper sale to the driver of the front car of a line of at least three cars, could be seen. The evidence is uncontroverted that the Plaintiff was not seen by anyone in the pick-up truck driven by Bobby Marshall.

As he approached the intersection, Bobby Marshall was traveling at a speed of twenty-five to thirty miles per hour, the speed limit at the point being forty miles per hour. Bobby Marshall testified that when he saw the cars stopped in the left-hand lane, he assumed that a car was making a left turn; so, without reducing his speed, he changed to the right-hand lane to go around the line of cars. The evidence is undisputed that at this time the traffic signal was green for traffic traveling in a southerly direction on Lynn Garden Drive. All of the occupants of the pick-up truck driven by Bobby Marshall testified that as the front of the truck reached the rear of Mr. Godsey's car the Plaintiff suddenly appeared in their lane of traffic. Mr.

Godsey testified that " * * * just as he [the Plaintiff] passed the right front fender I saw him go flying through the air." The uncontroverted evidence establishes that when the Plaintiff appeared in front of the truck it would have been physically impossible for Bobby Marshall to react in time to avoid the collision.[1]

In the view we take of the case, the question raised is whether any evidence has been presented proving essential facts or leading to a reasonable inference of essential facts upon which the liability of the Defendant could be predicated. As so stated, resolution of the question is controlled by Tennessee law.[2]

▮▮▮ In Tennessee a motorist is not an insurer of every injury that might occur as the result of the operation of his motor vehicle. Cawthon v. Mayo, 45 Tenn.App. 610, 325 S.W.2d 629 (1958). To recover damages an injured party must prove the usual essential facts to establish common law negligence: that the Defendant owed a duty, that he negligently breached his duty, and that the injuries were a proximate result of the Defendant's negligent breach of duty. Noland v. Freeman, 53 Tenn.App. 644, 385 S.W.2d 310 (1964).

▮▮▮ Under Tennessee law, even though a motorist has the right of way, he has a duty to use reasonable care to avoid injuring others lawfully on the highways.[3] Templeton v. Quarles, 52

1. The Plaintiff was severely injured in the accident, receiving both permanent physical disabilities and permanent brain damage. Counsel for the Plaintiff suggests that the small amount of the verdict shows that the jury applied the Tennessee doctrine of remote contributory negligence and mitigated damages because of the Plaintiff's negligence. See McLard v. Reid, 190 Tenn. 337, 229 S.W.2d 505 (1950). Since we find that on these facts the Defendants could not be found negligent, however, we need not consider the issue of remote contributory negligence.

2. We do not view this as a case involving the weight and sufficiency of the evidence to present a jury question, but rather one

where the Plaintiff has failed to make out a case of legal liability under Tennessee law. The exact scope of the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), is not a problem in this case therefore, as it is in many diversity actions where a directed verdict or a judgment notwithstanding the verdict is requested. Dick v. New York Life Insurance Co., 359 U.S. 437, 79 S.Ct. 921, 3 L.Ed.2d 935 (1959).

3. Plaintiff cited several Tennessee statutes, Tenn.Code Ann. §§ 59–834, 59–836 and 59–818, that the Defendant allegedly violated. We do not need to consider the

Tenn.App. 419, 374 S.W.2d 654 (1963); Hale v. Rayburn, 37 Tenn.App. 413, 264 S.W.2d 230 (1953). But the determination of what constitutes reasonable care under any particular circumstances is not always a jury question. Negligence will not be inferred from the mere happening of an accident or occurrence of injury, Williams v. Jordan, 208 Tenn. 456, 346 S.W.2d 583 (1961); it must be proved by direct or circumstantial evidence. Moon v. Johnston, 47 Tenn.App. 208, 337 S.W. 2d 464 (1959). In the instant case the Plaintiff has failed to present any evidence of negligent conduct by Bobby Marshall in the operation of his mother's truck or any circumstance from which negligence could be inferred.

Plaintiff contends that under the evidence the jury could have found that Bobby was driving at an unsafe speed under the circumstances even though he was well within the speed limit or that he failed to keep proper control of his vehicle or that he failed to keep a proper lookout ahead. First, it is true that under Tennessee law the established speed limit is not the sole measure of a reasonable speed; a motorist must drive his vehicle at a speed commensurate with the circumstances and can be found negligent even though obeying the statutorily established speed limit. Cawthon v. Mayo, 45 Tenn.App. 610, 325 S.W.2d 629 (1958) supra. We can perceive nothing extraordinary in the circumstances of this case, however, that would make a speed of twenty-five to thirty miles per hour on a four-lane highway unreasonable. The day was clear; the pavement was dry; and a line of cars, apparently turning left, is not an unusual circumstance at an intersection on a four-lane highway. Nor is it unusual for traffic to pass such a line of cars on the right. Secondly, a motorist is not chargeable with negligence for failing to avoid an obstruction that suddenly appears where the motorist has a right to assume it will not be.[4] Coleman v. Byrnes, 34 Tenn. App. 680, 242 S.W.2d 85 (1950); Seahorn v. Karr, 35 Tenn.App. 38, 242 S.W. 2d 331 (1951).

On this point, Plaintiff contends that if Bobby Marshall had kept a proper lookout ahead, he would have seen the Plaintiff and could have avoided the accident. We find no evidence in the record to support this contention.[5] Failure to see is no basis for concluding that a proper lookout was not kept. Coleman v. Byrnes, 34 Tenn.App. 680, 242 S.W.2d 85 (1950) supra. As indicated earlier no evidence was presented that a person who was situated as was the Plaintiff could have been seen, and the unimpeached testimony was that the Plaintiff was not seen earlier by any of the occupants of the truck.

In the absence of any proof that Bobby Marshall saw, or should have seen, the Plaintiff prior to the time that the Plaintiff appeared in front of the pick-up truck, we conclude that this case is controlled by Hooper v. Starkey, 41 Tenn. App. 633, 297 S.W.2d 948 (1956). In that case a pedestrian, suddenly and without warning, stepped in front of the

---

statutes, however, since they require no more than the ordinary care required by common law.

4. In denying Defendants' motion for directed verdict the District Court relied on evidence that the truck brakes applied unequally and evidence that Bobby Marshall did not have binocular vision (see footnote 5 infra). The evidence clearly showed, however, that the brakes stopped the truck within the required statutory limits, Tenn.Code Ann. § 59–917; and, even if it was established that the brakes were defective, that negligence could not have been the proximate cause of the accident absent proof that Bobby saw, or should have seen, the Plaintiff. The burden of proving proximate cause is on the Plaintiff. Seahorn v. Karr, 35 Tenn.App. 38, 242 S.W.2d 331 (1951) supra.

5. The evidence that Bobby Marshall lacked binocular vision does not affect this finding. No evidence was presented concerning the extent of his visual impairment; so no conclusion could be made as to whether he was negligent in driving in his condition. Likewise, absent proof that one with normal vision could have seen the Plaintiff in time to avoid the accident, no case for proximate cause was made out. See footnote 4 supra.

Defendant's car when the car was too close for the Defendant to avoid hitting the pedestrian. There the Court found " * * * that the only reasonable conclusion possible from the evidence was that the occurrence was a pure accident without fault on the part of defendant * * *." 297 S.W.2d at 951–952.

Since the Plaintiff failed to present any evidence of negligence on the part of the Defendants, the District Court should have granted a directed verdict. The judgment is reversed and the case remanded with instructions to enter judgment for the Defendants.