Omer Lee MULLINS and
Elizabeth Mullins

v.

SEABOARD COASTLINE RAILWAY
COMPANY et al.

Court of Appeals of Tennessee,
Eastern Section.

May 22, 1974.

Certiorari Denied by Supreme Court
Dec. 2, 1974.

Charles R. Terry, Morristown, Oliver B. Dickins, Jr., with Dickins & Schmitz, Nashville, for appellants.

William T. Gamble, with Wilson, Worley, Gamble, Dodson & Ward, Kingsport, J. Edward Hyder, Rogersville, for appellees.

## OPINION

SANDERS, Judge.

The Plaintiffs have appealed from a directed verdict by the Trial Court notwithstanding a jury verdict in their favor for personal injuries.

The Plaintiffs, Omer Lee Mullins and Elizabeth Mullins, filed suit in the Circuit Court of Hawkins County against the Defendants, Seaboard Coastline Railway Company, Louisville & Nashville Railway Company, d/b/a Clinchfield Railway Company, and P. O. Likens, for personal injuries to the Plaintiff, Omer Lee Mullins, and loss of consortium by the Plaintiff, Elizabeth Mullins.

The case was tried before a jury with The Honorable Thomas G. Hull, Circuit Judge, presiding.

At the conclusion of the Plaintiffs' proof the Defendants moved for a directed verdict on the grounds that there was no material evidence of negligence on the part of the Defendants and that the evidence produced established as a matter of law that the Plaintiff, Omer Lee Mullins, was guilty of proximate contributory negligence.

The Court sustained the motion as to the Defendant, P. O. Likens, but submitted the case to the jury as to the defendant railroads. The jury found the issues in favor of the Plaintiffs and fixed their damages at $35,000.00.

The Defendants filed a motion for a new trial seeking to have the Court set aside the verdict and judgment and enter a judgment for the Defendants in accordance with their motion for a directed verdict or, in the alternative, to grant a new trial.

The Court sustained the Defendants' motion and set aside the judgment and directed a verdict in favor of the Defendants.

The Plaintiffs have appealed to this court and assigned error.

The proof shows that on the date of the Plaintiff's injuries he was employed by General Shale Products Corporation as a forklift operator. He had been engaged in loading brick into a boxcar which had been furnished by the defendant railroads. After the boxcar was loaded the Plaintiff, along with a fellow employee, tried to close the boxcar door but it wouldn't close completely. When the door was about half closed it hung and they were unable to push it closed, nor could they push it back open. With the aid of a metal bar they pried the door loose and were able to push it open. The door, when moving, slid along a track or rail on the bottom of the car. After they got the door open they discovered that the rail on which the door was sliding was bent, which caused the door to bind and not slide forward.

Plaintiff testified that after discovering the defect in the·rail he tried a second time to close the door by shoving it "real hard." In doing so he injured his back rather severely, resulting in disability which precipitated this litigation. The testimony of the Plaintiff, in part, is as follows:

"Q. Now, at the time your first started to try to close the door, did you notice anything wrong with the door or the runners or the closing mechanics in any way?

"A. Not until it tightened down and we couldn't get it to go on to, and we looked. The bottom rail looked like it had been hit and bent in until it throwed it in a bind when it got up there, is what tightened it down, the rail had been bent.

"Q. All right, now how far did you move the door before it tightened down?

"A. I would say it went about half-way closed.

"Q. Did it become stuck when you got about half-way?

"A. Yes, yes, it just stopped. We couldn't get it to go on to.

"Q. And you then inspected it and saw that the bottom runner appeared to have been bent in so that it put the door and the runner in a bind?

"A. Well, yes, we seen that it was bent in some and we backed the door off, prized it back off.

"Q. You say you prized it off. What did you use to prize it off?

"A. It was a little iron bar that we used, just put it against there and prized it to get it to slide back.

"Q. When you tried the first time to close it, did you push pretty hard?

"A. Well, we wasn't expecting it to tighten down like that, so we really wasn't pushing as hard that time as we went against it the next time, but we knowed it was tight there, and we shoved it off there the second time we tried it.

"Q. All right, now you got the bar and pried it loose and opened it back up again, is that correct?

"A. Yes."

Continuing—

"Q. All right, what did you do then?

"A. We pushed it back—

"Q. Now, you say you pushed it back. You are talking about back in this direction?

"A. Yes, sir.

"Q. And then what did you do?

"A. I went against it real hard to try to force it to go on through, to close it.

"Q. All right, and then what happened to you?

"A. Well, that's when I hurt my back, and that still lacked about 18 inches of going all the way closed.

"Q. All right, did you go down, or how did—what happened to your back?

"A. I didn't fall, but I had—it hurt so bad, I had to quit. I couldn't help any more with the door.

As so often pointed out, the propriety of directing a verdict depends upon whether there is material and competent evidence which, if believed and viewed in the light most favorable to the plaintiff, supports the plaintiff's cause of action as set forth in the declaration. No question of the credibility of witnesses is involved and every inference reasonably to be drawn from the evidence must be resolved in favor of the plaintiff.

In resolving the question of plaintiff's contributory negligence as well as the question of defendants' negligence, we must be governed by the rule so clearly stated in D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 508, 206 S.W.2d 897, 901, as follows:

" 'While these issues involve a review of the evidence, such review is not to determine where the truth lies or to find the facts, that not being our province in jury cases. It is only to determine whether there was any substantial evidence to support the verdict; and it must be govered by the rule, safeguarding the constitutional right of trial by jury, which requires us to take the strongest legitimate view of all the evidence to uphold the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict. Johnston v. Cincinnati N.O. & T.P.R. Co., 146 Tenn. 135, 149, 240 S. W. 429; Finchem v. Oman, 18 Tenn. App. 40, 49, 50, 72 S.W.2d 564, 570.' "

See also City of Chattanooga v. Ballew, 49 Tenn.App. 310, 354 S.W.2d 806.

It is a well-settled rule of this State that the mere fact that an injury has been sustained never raises a presumption of negligence. Vinson v. Fentress, 33 Tenn.App. 359, 232 S.W.2d 272; Noland v. Freeman, 53 Tenn.App. 644, 385 S.W.2d 310.

In the case of Noland v. Freeman, *supra*, after pointing out that negligence could not be presumed from mere injury, the court went on to say:

"The plaintiff must go further and show (1) a duty owing by the defendant, (2) a negligent breach of that duty and (3) that the injuries proximately resulted from such breach of duty. De-Gloffer v. Nashville Railway & Light Co., 123 Tenn. 633, 134 S.W. 609."

Negligence is defined in History of a Lawsuit, 8th Ed., § 148, as follows:

"Negligence has been defined as the failure to exercise that degree of care and caution that an ordinarily prudent man would employ under like or similar circumstances, that is, negligence may consist either in doing a thing that an ordinarily prudent man would not have done, or failing to do something that an ordinarily prudent man would have done under like or similar circumstances."

Section 149 defines proximate cause as follows:

". . . 'that act or omission which immediately causes or fails to prevent the injury; an act or omission occuring or concurring with another, which, had it not happened, the injury would not have been inflicted.' "

In the case of Carney v. Goodman, 38 Tenn.App. 55, 270 S.W.2d 572, the court said that the question of proximate cause is always to be determined on the facts of each case "upon mixed considerations of logic, common sense, justice, policy and precedent." The court, in that case, went on to say:

"The best definition and the most workable test of proximate or legal

cause so far suggested seems to be this: 'The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm.' (Restatement, Torts, sec. 431). Prosser on Torts, 318."

■ The record is devoid of any act or omission by the Defendants which contributed to the Plaintiff's injuries. The Plaintiff, and the Plaintiff alone, was responsible for his injuries. To hold the Defendants liable under the facts in this case would be to make them an insurer, which they are not.

The assignments of error are overruled and the judgment of the Trial Court is affirmed. The cost of this appeal is taxed to the Plaintiffs.

COOPER, P. J. (E.S.), and PARROTT, J., concur.