IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 14, 2019 Session

## LISA PRIESTAS ET AL. v. KIA PROPERTIES, LLC ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-005046-15  Robert Samual Weiss, Judge**

_____

### No. W2019-00728-COA-R3-CV

_____

In this premises liability case, Mr. Priestas, an independent contractor, filed suit against Appellees, the owner/landlord and lessee of a convenience store, seeking damages for injuries he sustained during an attempted robbery at the store. The trial court granted Appellees' motion for summary judgment, finding that: (1) the lessee did not breach its duty because: (a) Mr. Priestas was an independent contractor; (b) he was aware of the danger at the store; and (c) he was warned that the store had been robbed on several occasions; and (2) the owner/landlord was not liable because of the general rule of non-liability of a landlord for harm caused to a third party on leased premises. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded.**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S. and CARMA DENNIS MCGEE, J., joined.

Gary L. Jewel, Memphis, Tennessee, and Lucille Anne Jewel, Knoxville, Tennessee, for the appellant, Lisa Priestas.

John I. Houseal, Jr., and Andre B. Mathis, Memphis, Tennessee, for the appellees, Kia Properties, LLC, and Chinai Food & Fuel, LLC.

### OPINION

### I. Background

On December 9, 2015, Gary Priestas and his wife, Lisa Priestas ("Appellant"), filed a premises liability action in the Circuit Court of Shelby County, Tennessee (the

"trial court").[1]  The Priestases sought damages for injuries sustained by Mr. Priestas when he was shot during a robbery at property owned by Kia Properties, LLC ("Kia") and leased for use as a convenience store by Chinai Food & Fuel, LLC ("Chinai," and together with Kia, "Appellees").

On May 18, 2017, Appellees filed a joint motion for summary judgment.  One year later, on May 18, 2018, Appellant filed a response in opposition to the motion for summary judgment.  However, Appellant did not file a response to the statement of undisputed material facts, nor did Appellant file a statement setting forth disputed facts in opposition to the motion for summary judgment.  As such, the facts of the case, as set forth by Appellees, are undisputed for purposes of summary judgment.[2]  Appellees' statement of undisputed material facts provides:

1.  At all times pertinent, Kia owned real property located at 9112 Austin Peay Highway, Millington, Tennessee 38053 (the "property").

2.  In September 2014, Chinai entered into an installment sales contract with Kia to purchase the property.

3.  At all pertinent times, Chinai operated a convenience store and fuel station.

4.  In early 2015, Plaintiff Gary Priestas drove by Chinai store and noticed a number of police cars at the store.

5.  Mr. Priestas stopped his car and walked inside the store and spoke with one of the owners of Chinai, Manish Chinaiwala.  Mr. Chinaiwala advised Mr. Priestas that the store had just been robbed.

6.  A few days later, Mr. Priestas was at the Chinai store and Mr. Chinaiwala asked Mr. Priestas if he could work at Chinai a few hours a day to perform tasks such as stocking the store's coolers and cleaning up inside and outside of the store.

7.  Mr. Priestas began working at Chinai in February 2015.

---

[1] Mr. Priestas died on July 17, 2016.  By order of October 28, 2016, Lisa Priestas, as Executrix of Mr. Priestas' estate, was substituted as plaintiff.  On December 20, 2016, she filed an amended complaint.

[2] Rule 56.03 of the Tennessee Rules of Civil Procedure provides that "[a]ny party opposing the motion for summary judgment must . . . serve and file a response to each fact set forth by the movant . . . ."  This Court has held that "material facts set forth in the statement of the moving party may be deemed admitted in the absence of a statement controverting them by the opposing party."  ***Holland v. City of Memphis***, 125 S.W.3d 425, 428 (Tenn. Ct. App. 2003).

8. Mr. Chinaiwala informed Mr. Priestas that Chinai had been burglarized/robbed on several prior occasions.

9. Mr. Priestas advised Mr. Chinaiwala that he had a license for a concealed carry permit and that he would be carrying a concealed firearm as he performed his duties at Chinai, "especially since they had been held up on multiple occasions since [Mr. Chinaiwala] had acquired the business."

10. On the evening of April 18, 2015, Mr. Priestas went to work at Chinai at approximately 7:00 p.m.

11. Mr. Priestas was armed.

12. As usual, he stocked the coolers and swept inside the store.

13. At approximately 8:30 p.m., Mr. Priestas was walking outside [] the store to clean up around the fuel pumps. As he walked outside the store, [] Robert Stewart, who had on a ski mask and was armed with an AK-style assault rifle, was in the process of entering the store.

14. Mr. Priestas yelled at Mr. Stewart "what do you think you're doing" and then yelled back in the store, "Gun!"

15. Mr. Priestas then grabbed Mr. Stewart's gun and attempted to wrestle control of the gun from Mr. Stewart.

16. Mr. Priestas pushed Mr. Stewart out of the doorway toward the fuel pumps. At some point during the struggle, Mr. Priestas was shot by Mr. Stewart, causing serious injuries.

17. Prior to the subject incident Kia and Chinai had installed surveillance cameras, an alarm system, Wall Pack Lighting, canopy Lights and flood lights to protect against criminal activity.

18. The subject incident was partially captured on surveillance cameras, which led to the arrest and prosecution of the Stewart brothers.

The trial court heard the motion for summary judgment on January 8, 2019. By order of April 12, 2019, the trial court granted the motion for summary judgment. Appellant appeals.

## II. Issues

Appellant raises several issues for review. However, we perceive that there is one dispositive issue: Whether the trial court erred in granting Appellees' motion for summary judgment.

## III. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment *de novo*, without a presumption of correctness. *Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Rye*, 477 S.W.3d at 250 (citing *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013); *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

However, "a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis." *Rye*, 477 S.W.3d at 264. Rule 56.03 requires the moving party to support its motion with "a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. As noted above, in the instant case, Appellees provided a statement of undisputed material facts, and Appellant filed no response to those facts. So, even where the determinative issue is ordinarily a question of fact for the jury, summary judgment is still appropriate if the evidence is uncontroverted (which it is in this case) and the facts and inferences to be drawn therefrom lead only to one conclusion. *White v. Lawrence*, 975 S.W.2d 525, 529-30 (Tenn. 1998) ("The Court must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in her favor, and discard all countervailing evidence. Only if the facts and conclusions to be drawn from the facts permit a reasonable person to reach only one conclusion should summary judgment be granted.") (citations omitted).

## IV. Analysis

In order to prevail on a negligence claim, a plaintiff must provide evidence to establish the following elements: (1) a duty of care owed by defendant to plaintiff; (2) a breach of that duty of care; (3) an injury or loss; (4) cause in fact; and (5) proximate or legal cause. *King v. Anderson Cty.*, 419 S.W.3d 232, 246 (Tenn. 2013). "The mere fact that an injury has been sustained never raises a presumption of negligence." *Mullins v.*

*Seaboard Coastline Ry. Co.*, 517 S.W.2d 198, 201 (Tenn. Ct. App. 1974) (citations omitted).

Duty, the first element of the claim, is "the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care in order to protect against unreasonable risks of harm." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). The existence or nonexistence of a duty owed by the defendant to the plaintiff is a question of law for the court to decide. *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993). This case is a premises liability action, wherein Appellant contends that Kia, as the owner/lessor of the property, and Chinai, as the operator/lessee, breached their respective duties to Mr. Priestas. The trial court found that "[t]he parties agree and the Court finds that Gary Priestas, deceased, worked as an independent contractor [as opposed to a security guard] for Chinai." The parties do not dispute this finding on appeal.

### A. Chinai's Liability

In cases involving an independent contractor, an owner/operator "generally owes an independent contractor hired to perform work on the premises a duty to provide a reasonably safe place in which to work." *Blair v. Campbell*, 924 S.W.2d 75, 76 (Tenn. 1996). The "duty includes the specific responsibility of either removing, or warning the independent contractor of, any hidden or latent dangers on the property." *Id.* Here, the trial court applied *Blair* in holding that

> Gary Priestas was aware of and warned of the danger on the property of potential robberies and burglaries at the subject property. [] Because Chinai warned Gary Priestas of the danger to the property, it is not liable as a matter of law for injuries sustained by Plaintiff as a result of the April 18, 2015 incident.

Under *Blair*, Chinai owed Mr. Priestas a duty to warn him of the fact that the property had been robbed on several occasions. According to the undisputed material facts, Chinai satisfied this duty, to-wit:

> 4. In early 2015, Plaintiff Gary Priestas drove by Chinai store and noticed a number of police cars at the store.
> 5. Mr. Priestas stopped his car and walked inside the store and spoke with one of the owners of Chinai, Manish Chinaiwala. **Mr. Chinaiwala advised Mr. Priestas that the store had just been robbed**.
>
> ***
>
> 8. **Mr. Chinaiwala informed Mr. Priestas that Chinai had been burglarized[/]robbed on several occasions.**

- 5 -

(Emphases added).  Furthermore, according to the undisputed facts, when he accepted the job, Mr. Priestas acknowledged the fact that the store had been robbed on several occasions, and

> informed Mr. Chinaiwala that [Mr. Priestas] had a license for a concealed carry permit and that he would be carrying a concealed firearm as he performed his duties as Chinai, "especially since they had been held up on multiple occasions since [Mr. Chinaiwala] had acquired the business."

From the foregoing undisputed facts, a reasonable person could only conclude that Chinai met its duty to warn Mr. Priestas of the robberies that had taken place on the property.  In view of Chinai's warning to Mr. Priestas, Appellant failed to satisfy the second element of the *prima facie* case for negligence, i.e., breach of duty.  Accordingly, the trial court properly granted Chinai's motion for summary judgment.

### B. Kia's Liability

As noted above, in September 2014, Chinai entered into an installment sales contract with Kia to purchase the convenience store.  So, at the time of the incident giving rise to this case, i.e., April 18, 2015, Kia was the owner/landlord of the property.  "Generally, a landlord is not liable to a tenant or a third party for harm caused by a dangerous condition on the leased premises."  ***Lethcoe v. Holden***, 31 S.W.3d 254, 256 (Tenn. Ct. App. 2000) (citations omitted).  However the general rule of a landlord's non-liability is subject to certain exceptions:

> The general rule of a landlord's non-liability is subject to several exceptions.  One exception applies if the following facts are shown: (1) the dangerous condition was in existence at the time the lease was executed; (2) the landlord knew or should have known of the dangerous condition; and (3) the tenant did not know of the condition and could not have learned about it through the exercise of reasonable care.  ***Maxwell v. Davco Corp. of Tennessee***, 776 S.W.2d 528, 531-32 (Tenn.Ct.App.1989).  **As a natural corollary of this exception, when a landlord and a tenant have co-extensive knowledge of the dangerous condition, the landlord is not liable to the tenant, or the tenant's employees, for injuries sustained as a result of the dangerous condition**.  *See id*. at 532.

*Lethcoe*, 31 S.W.3d at 256 (emphasis added).  In granting summary judgment to Kia, the trial court found

> that Plaintiff cannot, as a matter of law, overcome the general rule of non-liability of a landlord for harm caused to a third party (Gary Priestas) on leased premises. [] Specifically, Plaintiff cannot establish the [***Lethcoe***]

exceptions apply because the undisputed facts show that Chinai, the tenant, did in fact know of the dangerous condition on the property. [] Therefore, the Court holds that Kia is entitled to summary judgment on Plaintiff's premises liability/wrongful death claim.

There can be no doubt that Chinai and Kia had "co-extensive knowledge of the dangerous condition" at the store. According to the statement of undisputed material facts, "[p]rior to the subject incident Kia and Chinai had installed surveillance cameras, an alarm system, Wall Pack Lighting, canopy Lights and flood lights **to protect against criminal activity** [at the store]." (Emphasis added).

Nonetheless, Appellant contends that Kia is liable because it retained control of the property under the September 2014 installment sales contract. The general rule of non-liability of a landlord is premised on the assumption that the landlord is not in control of the property; a landlord may be held liable where the landlord in fact retains control of the property. *Lethcoe*, 31 S.W.3d at 258 (citing *Whitsett v. McCort*, 1990 WL 123943, *4 (Tenn. Ct. App. Aug. 28, 1990)). Appellant asserts that the arrangement between Kia and the Chinaiwalas was more akin to a principal/agent relationship than to a landlord/tenant relationship. Specifically, Appellant argues that the Chinaiwalas took possession under an installment contract, not a lease, and, under the agreement, Kia retained ownership of the property. Furthermore, under the specific terms of the installment sales contract, Kia required Chinai to: (1) keep the store open seven days a week, 365 days a year; (2) sell lottery tickets; and (3) honor the remainder of a prior fuel agreement. Based on these requirements, and the fact that Kia maintained ownership through the terms of the installment sales contract, Appellant asserts that Kia was, in fact, in control of the premises. *Bowman v. Benouttas*, 519 S.W.3d 596, 597 (Tenn. Ct. App. 2016) ("The most indicative factor in determining whether a principal-agent relationship exists is the right of the principal to control the conduct of the work of the agent."). In support of her argument, Appellant relies on this Court's opinion in *Johnson v. Dupree Oil Co.*, No. E2004-01433-COA-R3-CV, 2005 WL 1981799 (Tenn. Ct. App. Aug. 16, 2005). In *Johnson*, Mike Dupree and his wife owned a gas station, which they leased to Dupree Oil Corporation. *Id.* at *1. Subsequent to this lease, Dupree Oil entered into a Complete Management Fee Agreement ("CMFA") with Jay Patel, under which agreement Mr. Patel operated the gas station. Under the CMFA, all proceeds from the operation of the gas station were paid to Dupree Oil. *Id.* Based on the CMFA, the trial court held, and this Court affirmed, that Dupree Oil was the lessee and that Mr. Patel, as the manager, was merely an agent and not a sublessee. *Id*. at *7. The *Johnson* Case is readily distinguishable from the instant appeal in that Chinai is clearly not a manager or agent for Kia. Although the agreement between Chinai and Kia specifies that the property will be used as a gas station and convenience store, Chinai is an independent operator doing business on its own behalf and not merely conducting business or managing the property on behalf of Kia. Unlike *Johnson***,** Chinai had no obligation to remit any proceeds to Kia other than its lease payments. As such, Kia did not exert the

type of control necessary to establish an exception to the general rule that a landlord is not liable for harm caused to a third party by a dangerous condition on leased premises.[3]

### V. Conclusion

For the foregoing reasons, we affirm the trial court's order. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of this appeal are assessed to the Appellant, Lisa Priestas, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE

---

[3] In her brief, Appellant argues that the exception to non-liability for landlords, "where a landowner conducts an inherently dangerous activity [on the premises,]" applies in this case. *Lethcoe*, 31 S.W.3d at 259 (quoting *Int'l Harvester Co. v.* Sartain, 222 S.W.2d 854 (Tenn. Ct. App. 1948)). Without addressing whether the continued operation of a frequently robbed convenience store is, in fact, a dangerous activity, from our review, Appellant failed to raise this argument in the trial court. As such, the argument is waived on appeal. *City of Memphis v. Shelby Cty.*, 469 S.W.3d 531, 560 (Tenn. Ct. App. Feb. 20, 2015) ("It has long been the general rule that questions not raised in the trial court will not be entertained on appeal[.]").