**Ladon LANGFORD, and wife Barbara Langford, Plaintiffs-Appellees,**

v.

**MINGLE & ELROD, INC., Defendant-Appellant.**

Court of Appeals of Tennessee, Western Section, at Nashville.

Nov. 16, 1984.

Application for Permission to Appeal Denied Jan. 22, 1985.

Raymond G. Prince, Hendersonville, for plaintiffs-appellees.

William C. Moody, Nashville, for defendant-appellant.

CRAWFORD, Judge.

Plaintiffs, LaDon Langford and wife, Barbara Langford, appeal from the judgment of the trial court on a jury verdict in favor of defendant, Mingle and Elrod, Inc.

Plaintiffs' complaint alleges in substance that as an employee of Moore Hardware he entered the premises of defendant to sandblast and paint large steel "I" beams stacked on defendant's premises. The "I" beams were stacked using wooden boards to separate them, and one or more of the wooden boards broke causing the "I" beams to fall without warning or notice to plaintiff, causing plaintiff to suffer the injuries and damages alleged. Plaintiffs aver that defendant, through its employees, was negligent in failing to stack the steel "I" beams in a safe and reasonable manner and that this negligence directly and proximately caused the losses, injuries and damages to plaintiffs.

The defendants filed an answer to the complaint joining issue on all of the material allegations, denying specifically that it was guilty of any negligence which directly and proximately caused any injuries and damages to plaintiffs.

The proof indicated that plaintiff, along with fellow employees of Moore Hardware, was sent to the premises of the defendant to sandblast and then paint steel "I" beams which defendant had stacked about waist high on the premises. The "I" beams involved in this controversy were approximately 25 to 30 feet long and the horizontal part of the beam was 18 to 20 inches. They weighed, depending on the length, 1000 to 2000 pounds each. The "I" beams were generally moved by a forklift and were stacked with wood separating each "I" beam in order to utilize the forklift and also to facilitate the sandblasting and painting as it occurred. Testimony indicated that the weight of the beams required that they be separated by hardwood blocks at least 3 × 3, but preferably 4 × 4. Plaintiff contended and proof was introduced that the wooden blocks separating the beams that caused his injuries were less than 3 × 3. He alleged that the smaller blocks broke because of their inadequate size and that their breaking caused the stack to fall and injure him.

The proof is uncontroverted that the plaintiff was working on a stack of "I"

beams to his front and that the stack of "I" beams that collapsed and caused his injury was a stack of "I" beams to his back or to his right and on which he was not working. While plaintiff was sandblasting a stack of "I" beams, the stack behind or beside him collapsed, fell upon his legs and caused the injuries for which suit was brought.

Plaintiffs have presented three issues for review by this court and we will first consider the second issue which is framed by plaintiffs as:

The trial court erred in instructing the jury on the issue of contributory negligence, because this affirmative defense was neither pleaded by the defendant, nor was there sufficient evidence to justify submission of the issue to the jury, nor was the issue tried by consent of the parties.

The instruction complained of is as follows:

The plaintiff cannot recover in this action if you determine that he was guilty of negligence which proximately contributed to causing the accident and from which an injurious event might reasonably have been anticipated by the plaintiff.

Remote contributory negligence may be defined as that negligence which is too far removed as to time or place or causative force to be a direct or a proximate cause of the accident. If you find that the plaintiff was guilty of such remote contributory negligence, you must reduce the recovery which you would otherwise award him in proportion to his contribution to the injury.

Defendants did not plead contributory negligence, made no effort to introduce proof concerning contributory negligence, and in fact did not make any such argument to the jury in its closing argument. The evidence relied upon by defendant to support an instruction to the jury on contributory negligence came from the president of defendant corporation, Mr. Elrod. That testimony is quoted:

Q. All right, sir. Now, you went to the scene of this accident.

A. Yes, sir.

Q. And you saw the plaintiff there, Mr. Langford.

A. Yes, sir.

Q. What was his position that you saw?

A. I can try to explain this in words, or I can draw you a picture. Which would you want me to do?

Q. Just try to explain it, I think.

A. All right. Let's for a moment pretend that, say, this is the area where he was. The piece that he was working on represented by this edge of the podium here. Mr. Langford was laying in approximately this position here (indicating). He was not laying across the piece of material that he was working on. In fact, we moved that piece of material in order to get to him and get him free from the steel. He was laying across some members that were behind his back, because he was laid back on his back, from the standpoint of his legs folded under. He was laying across the members. The member that struck him appeared to be—have come from the other side and was across him. He was laying across material that he was not working on. My opinion is that he was standing between two stacks of steel and reaching over one of them to work on a piece on the ground.

Q. Is that a safe practice?

A. No, sir.

We do not consider this to be proof of proximate contributory negligence under the facts of this case. The proof is uncontroverted that the stack of "I" beams on which plaintiff was working was not the stack of "I" beams that fell on him. There is further uncontroverted proof that a stack of "I" beams could not be pushed over or caused to collapse by the efforts of a human being without the aid of machinery. The testimony of defendant's president giving his opinion that plaintiff's activities were not a "safe practice" is not related in any way to the collapse of the stack of "I" beams on plaintiff's leg. It, there-

fore, forms no basis for a charge of contributory negligence on plaintiff's part. The record is otherwise silent about any activities of plaintiff that could remotely be considered negligence on his part, and we conclude that there was no evidence of contributory negligence on the part of plaintiff, LaDon Langford.

In *Ketron v. Gray*, 503 S.W.2d 194 (Tenn.App.1973), plaintiffs sued for the wrongful death of their daughter who, at the time of the fatal accident, had been riding as a passenger in a motorboat driven by defendant. There was no proof introduced at trial concerning any contributory negligence on the part of plaintiffs' decedent. The plaintiffs appealed the jury verdict and judgment in favor of defendants assigning as error the court's instruction to the jury on contributory negligence. In holding that the trial court committed error in giving this instruction, Judge Sanders, coining a phrase from an earlier case, said:

> In the case at bar, we find ourselves asking the question, what did the deceased do besides take her seat in the boat?

*Id.* at 197.

Following Judge Sanders' lead, this court finds itself asking the question, "What did the plaintiff LaDon Langford do besides sandblast the stack of beams on which he was working?"

In *Wilson v. Tranbarger*, 218 Tenn. 208, 402 S.W.2d 449 (1965), the court held that the trial court's instruction to the jury on the question of joint venture was erroneous because there was no evidence thereof in the record and accordingly reversed the judgment of the trial court. The court said:

> It has been held time and again that: "The instructions given by the judge to the jury should be directly applicable to the facts in evidence. There must be testimony tending to raise the question in order for an issue to be submitted to the jury. An instruction which assumes that there is evidence tending to prove certain facts, when there is no such evidence, is erroneous. *Goodall v. Thur-*

*man*, 38 Tenn. 209. *East Tenn. V. & G.R. Co. v. Toppins*, 78 Tenn. 58. *Three States Lumber Co. v. Blanks*, 118 Tenn. 627, 102 S.W. 79. *Allen v. Melton*, 20 Tenn.App. 387, 99 S.W.2d 219." *Mayor and Aldermen of Town of Morristown v. Inman*, 47 Tenn.App. 685, 342 S.W.2d 71.

*Id.* at 461.

■ Since there was no proof in the record in the case sub judice of contributory negligence, the instruction to the jury in that regard was erroneous and we must now turn our attention to T.R.A.P. 36(b) which is as follows:

> (b) Effect of Error.—A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.

In *O'Rourke v. Street Railway Co.*, 103 Tenn. 124, 52 S.W. 872 (1899), plaintiff sued the railway company to recover damages for an alleged wrongful expulsion from one of its cars, and the trial resulted in a jury verdict against him. In considering the assignment of error concerning the jury charge of the trial court, the court said:

> In his charge to the jury the trial judge said: "A person may lose his right to continue his journey as a passenger upon a car under the following circumstances:
>
> "1. When he acts in such way as to endanger the peace and comfort of the other passengers, he has no right to continue his journey upon the car.
>
> "2. When he presents to the conductor, as an evidence of his right to ride, a ticket or transfer check which shows upon its face that he has no such right, then he cannot continue his journey upon such ticket.
>
> "3. When the conductor, who declined to accept the ticket or transfer, gave such explanation of the defect in the ticket or transfer as would have satisfied any ordinarily reasonable person that the

conductor was justified in refusing to take it, then he cannot continue his ride."

Though entirely sound in law, the first of these three propositions is wholly inapplicable in the present case, there being *no evidence* tending, in the slightest degree, to show that the plaintiff was guilty of conduct calculated to "endanger the peace and comfort of other passengers." Legal abstractions in a charge are not always hurtful, and, unless it appears that they may have been so, the giving of them, while never to be approved, is not reversible error. *In this instance it is not improbable that the jury was misled into the belief that the court thought there was evidence on this particular point, and expected its consideration in the making up of the verdict;* hence, the irrelevant instruction may have been in some degree prejudicial to the plaintiff, and its inclusion in the charge is therefore noted as one ground of reversal. (Emphasis supplied).

*Id.* at 129–131, 52 S.W. 872.

In *Ketron v. Gray*, 503 S.W.2d 194 (Tenn.App.1973), the court, in finding that a contributory negligence instruction, in the absence of such evidence, likely resulted in prejudice to plaintiffs, said:

> Also, we think the charge of the Court is couched in such language that, since there are no specific acts of contributory negligence shown, the jury could have concluded that any act or inattentiveness on the part of the deceased, such as looking in a direction other than the direction in which the boat was traveling immediately before the accident, would bar a recovery.

*Id.* at 197.

In the case before us, we cannot escape the conclusion that in the absence of specific acts of contributory negligence on the part of plaintiff, the jury could have concluded that any act or inattentiveness on the part of the plaintiff, such as leaning over the stack on which he was working just before the other stack fell on him, would bar recovery.

Accordingly, the judgment of the trial court is reversed and this case is remanded for a new trial. Costs of appeal are adjudged against appellee.

Because of our decision, we pretermit consideration of the other issue.

NEARN, P.J. (W.S.), and TOMLIN, J., concur.