**PARK PLACE CENTER ENTERPRISES, INC., d/b/a "August Moon," Plaintiff–Appellant,**

v.

**PARK PLACE MALL ASSOCIATES, L.P., Defendant–Appellee.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Jan. 8, 1992.

Application for Permission to Appeal Denied by Supreme Court July 27, 1992.

Eugene J. Podesta, Jr., Memphis, for appellant.

Joseph H. Crabtree, Jr., Memphis, for appellee.

CRAWFORD, Judge.

This case involves the construction of a commercial lease agreement. Plaintiff, Park Place Center Enterprises, Inc., d/b/a "August Moon" (hereinafter plaintiff or tenant), appeals from the order of the trial court dismissing its complaint against defendant Park Place Mall Associates, Inc., (hereinafter defendant or landlord).

Plaintiff's amended complaint sought a preliminary injunction, a declaratory judgment construing the lease provisions regarding assignment and subletting, reformation, specific performance and money damages. Plaintiff sought to enjoin defendant from terminating the lease and from interfering with its possession thereunder pending the court's construction of the lease provision.

On February 22, 1991, the chancellor heard arguments of counsel and after consideration of the pleadings, depositions and exhibits filed with the clerk, the court entered an order on March 11, 1991, which construed the lease provision in question and dismissed plaintiff's application for temporary injunction. Because the chancellor's construction of the lease provision was dispositive of all issues before the court, the chancellor dismissed the complaint.

Plaintiff Park Place Mall Enterprises, Inc., is a Tennessee corporation which owned and operated a Chinese restaurant in Park Place Mall, a Memphis, Tennessee shopping center. Hung M. Chen, plaintiff's sole stockholder, also operated four restaurants in the Nashville area. Defendant, a Delaware limited partnership, owns Park Place Mall. By lease agreement dated February 16, 1990, plaintiff, as tenant,

acquired from defendant as landlord or lessor the premises in Park Place Mall for the restaurant's operation. The provision of the lease which is applicable to the dispute before the Court is Article 11.11, which provides:

11.11 *Assignment and Subletting.*

(a) Tenant covenants and agrees not to assign this Lease or to sublet the whole or any part of the Leased Premises, or to permit any other persons to occupy same without the prior written consent of the Landlord <u>which consent shall not be unreasonably withheld,</u> references elsewhere herein to assignees notwithstanding. In the event that the Tenant requests permission to either assign this Lease, or to sublet the whole or any part of the Leased Premises, or this Lease is deemed to be assigned pursuant to subparagraph (b) below, then Landlord may elect to do one of the following: (i) consent thereto; (ii) withhold consent in its sole and absolute discretion; or (iii) terminate this Lease within thirty (30) days after receipt of Tenant's request to assign or sublet, in which event this Lease shall terminate and end upon thirty (30) days' written notice of Landlord's election to so terminate. Any such assignment or subletting, even with the consent of Landlord, shall not relieve Tenant from liability for payment of rent or other sums herein provided or from the obligation to keep and be bound by the terms, conditions and covenants of this Lease. The acceptance of rent from any other person shall not be deemed to be a waiver of any of the provisions of this Lease or to be a consent to the assignment of this Lease or subletting of the Lease Premises.

(b) If Tenant is a corporation, then any transfer of this Lease from Tenant by merger, consolidation or liquidation, or any change in ownership or power to vote of a majority of its outstanding voting stock shall constitute an assignment for the purpose of this Lease.

(c) An assignment for the benefit of creditors or by operation of law shall not be effective to transfer any rights to assignee without the written consent of the Landlord first having been obtained. (Emphasis in original).

The lease was negotiated on behalf of tenant by Chen and on behalf of landlord by Paul L. Orth. Orth provided Chen with a standard form lease prepared by landlord. Paragraph 11.11 of the standard form did *not* contain the above underlined statement, "which consent shall not be unreasonably withheld." Chen returned the proposed lease to Orth with a number of deletions and alterations. Among the modifications desired by Chen, was the addition to Paragraph 11.11 of the language "which consent shall not be unreasonably withheld." This was agreed upon and the final Paragraph 11.11 is as quoted above. The lease agreement was duly executed, and Chen also signed the agreement individually as a personal guarantor of the corporate tenant's obligations under the lease.

In the summer of 1990, Chen concluded that it was too difficult to operate a restaurant in Memphis with his principal base of operations in Nashville, and in the fall of 1990 he began negotiations with Kwok Fu Lam concerning the possibility of the purchase by Lam of Chen's corporate stock in plaintiff. In October, 1990, Chen reached an agreement with Lam concerning the sale of his stock, which was expressly contingent upon defendant's approval of the transaction pursuant to the lease. Lam's lawyer contacted landlord's representative concerning the landlord's consent and was instructed to present a written request which was done. In response to the written request, defendant notified plaintiff by letter dated November 7, 1990, that defendant was terminating the lease pursuant to Paragraph 11.11(a)(iii) of the lease.

Defendant never made any decision as to whether it should consent to the assignment of the lease as requested and merely notified defendant that the lease would be terminated pursuant to the stated lease provision.

Plaintiff asserted in the trial court, and asserts in this Court, that the lease provision relied upon by defendant to terminate the lease is wholly repugnant to the provi-

sion regarding the withholding of consent to assignment negotiated by the parties and specifically inserted in the final draft of the lease. Defendant asserted in the trial court and asserts in this Court that while the defendant could not unreasonably withhold consent to an assignment, this did not affect the provision of the lease allowing defendant to terminate the lease if assignment was requested. The trial court's construction of this lease provision is set out in its order as follows:

\*   \*   \*   \*   \*   \*

1. the Defendant's right to terminate the Plaintiff's Lease found in Article 11.11 therein, does not conflict and is not repugnant with the provision negotiated by Plaintiff that Defendant's consent to an assignment of the Lease "shall not be unreasonably withheld,"

2. Article 11.11 of the Lease is not ambiguous with regard to Defendant's right to terminate the Lease upon the Plaintiff's request for the Defendant's consent to an assignment of the Lease,

\*   \*   \*   \*   \*   \*

■ The interpretation of a written agreement is a matter of law and not of fact. *APAC–Tennessee, Inc. v. J.M. Humphries Const. Co.*, 732 S.W.2d 601 (Tenn. App.1986). Therefore, our scope of review is *de novo* on the record with no presumption of correctness of the trial court's conclusions of law. See *Adams v. Dean Roofing Co.*, 715 S.W.2d 341 (Tenn.App.1986).

■ The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention consistent with legal principles. *Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouth, Inc.*, 521 S.W.2d 578 (Tenn. 1975). In construing contracts, the words expressing the parties' intentions should be given their usual, natural and ordinary meaning. *Taylor v. White Stores, Inc.*, 707 S.W.2d 514 (Tenn.App.1985). All provisions of a contract should be construed as in harmony with each other, if such construction can be reasonably made, so as to avoid repugnancy between the several provisions of a single contract. *Bank of Commerce & Trust Co. v. Northwestern Nat'l.*

*Life Ins. Co.*, 160 Tenn. 551, 26 S.W.2d 135, 68 A.L.R. 1380 (1930). If the provisions are repugnant and cannot be reconciled, the first and principle clause is controlling and the subsequent provisions repugnant thereto are void and unenforceable. *Bean v. Aetna Life Ins. Co.*, 111 Tenn. 186, 78 S.W. 104 (1903).

■ With the above well-established rules in mind, we will examine the contract provision in dispute. It is uncontroverted that the provision in Paragraph 11.11 requiring that consent to assignment or subletting shall not be unreasonably withheld was a negotiated provision specifically requested by the tenant. The importance of this provision is marked by its emphasis in the contract. Clearly, the parties intended that the tenant could not put someone else in its place unless the landlord consented, but the denial of consent *must* have a reasonable basis. After expressing this intent, Paragraph 11.11 proceeds to outline the options of the landlord when assignment or subletting is sought. These options must be considered in light of the clear mandate of the contract that there must be reasonable basis for a denial of consent by the landlord.

■ Defendant argues that its option to "withhold consent in its sole and absolute discretion" authorizes it to do what it wants without regard to any reasonable basis therefor. We disagree with this interpretation. While the discretion provision leaves the question of consent to the judgment of the landlord, language prefatory to that provision states such consent "shall not be unreasonably withheld." Although these provisions may appear to be repugnant, we believe the better view is to reconcile them by reading option (ii) to mean that the landlord may withhold consent in his sole discretion provided that such discretion is not unreasonably exercised. In short, we believe the intent of the parties, as expressed by language of the contract, was to give the landlord the choice of denying consent to assignment of the lease on the condition that such denial had a reasonable basis. This interpretation

is consistent with both the specific provisions of the contract regarding its interpretation and with the law of this state. Implied in every contract is a duty of good faith and fair dealing in its performance and enforcement, *T.S.C. Industries, Inc. v. Tomlin*, 743 S.W.2d 169 (Tenn.App.1987), and the parties specifically provided in the lease contract under consideration that:

[t]his Lease shall not be construed either for or against Landlord or Tenant, but this Lease shall be interpreted in accordance with the general tenor of the language in an effort to reach an equitable result.

Thus, we find that, under the clear mandate of the lease, the parties intended by the language of (ii) that, while the landlord has the discretion to make the decision, it must exercise such discretion conscientiously and reasonably.

Defendant argues also that the option to terminate the lease provided for in the (iii) is absolute. Here again, we must respectfully disagree with defendant's argument. We interpret this provision to mean that the landlord has this option if, and only if, it has first made the determination that there is a reasonable basis for withholding consent to assignment or subletting. In such event, it can then either rest on the withholding of consent or go further and terminate the lease pursuant to the provisions of (iii).

Our interpretation of Paragraph 11.11 allows the provisions of the paragraph to be operative and in harmony with each other. We have also adhered to the rule that restrictions in the transfer of property should not be extended or enlarged by implication. *Central Drug Store v. Adams*, 184 Tenn. 541, 201 S.W.2d 682 (1947).

Our interpretation of the contract now requires the determination of whether landlord unreasonably withheld consent and because of the trial court's interpretation of the lease, this issue was not reached. Accordingly, the judgment of the trial court is reversed and this case is remanded to the trial court for such further proceedings as may be necessary consistent with this opinion. Costs of the appeal are assessed against appellee.

TOMLIN, P.J., (W.S.) and FARMER, J., concur.